in our second case, the Episcopal Church in SC versus the Church Insurance Company of VT. Council? Your Honor, Thomas Tisdale here on behalf of the Episcopal Church in SC, otherwise the diocese, and happy to be here and thank you for the opportunity. We represent the diocese of SC, which is the Episcopal Church in SC. The Insurance Company of Vermont, the defendant in this case, the appellee, is a captive insurance company of the Episcopal Church. The appellant, the Episcopal Church in SC, is a hierarchical church, having been deemed to be so by this court in Dixon v. Edwards in 2000. The appellee, the Insurance Company of Vermont, is a captive insurance company chartered in the state of Vermont. Its charter prohibits it from insuring any policy of insurance or any insurance to any non-entity of the Episcopal Church. In other words, it has to be doing business only with Episcopal Church entities, such as the Diocese of SC. Are we in agreement that the policy year here is 2012? No, Your Honor, that's one of the problems. We haven't had any discovery in the case. The evidence we have indicates that the policies were reissued in 2013. In fact, a year ago. So, I'm sorry, you're proceeding under the 2012 policy? We are not. I hadn't picked up that. I thought it was 2012, to be honest with you. That's when it began, Your Honor, but it has continued for years since and is going on right now, what we're complaining about. Who owns the policy? Who's the holder? The Diocese of SC. Is that your client? Yes, it is. Well, that brings me to another question. We know that there is a group of two Episcopal entities in SC. That is correct, Your Honor. Should this case be held in abeyance because of that litigation? Does that litigation affect this case? It needs to be held in abeyance, but it could be some similar cases in the 4th Circuit have been held in abeyance, pending a decision of the SC Supreme Court on issues that have followed what it said was its final judgment in this case. But the SC Supreme Court seems to be not terribly helpful on some of these issues, and is your issue an issue that could be resolved by the SC Supreme Court? The issue before this court? Your court? Yes. Okay. We don't think so. Okay. May I proceed and just say what our claim is? And I think that will give some help in some of the questions that the court has already raised. Well, let me at least point you because we could go into a narrative of it, but I think it would be helpful with regard to those claims I would say you have the burden of showing jurisdiction. You probably accept that. And so what I'm asking is in as straightforward a way as you can for each claim, can you tell me what is your injury in fact and how is it fairly traceable to the insurance company's conduct? Well, that to me seems to be the that goes right to the heart of what I think is the issue, I'm not speaking for my colleagues, but that's what I think. I think that I can, at least partially if not completely, satisfy your question by describing the claim we're making. And it is this, that Vermont, the captive insurance company of the Episcopal Church, has and is providing insurance coverage to parties not related to the Episcopal Church, which is prohibited by its charter, and it is reimbursing them, the non-Episcopal entities, for time and for legal fees and expenses incurred in litigation against both the plaintiff diocese and the Episcopal Church. And they are paying these fees and litigation expenses from the proceeds of insurance policies that are owned by the Episcopal Church in South Carolina, according to the South Carolina Supreme Court. So they have other insureds that you don't think they should have? Absolutely. And Judge Gergel said that wasn't any of your business, and you didn't have any standing. Well, Judge Gergel says we didn't have any standing, but we think the procedural law regarding standing is quite relevant here, and that we do have standing to proceed. And if I may, I would cite three important principles on the standing issue that make that so. First of all, this court is required, we believe, to consider the issue de novo. That was affirmed by this court in 2018 in the deal case, deal against Mercer County School District. Then all of the and if Judge Gergel had accepted all of the allegations of the complainant's truth, we would have standing. That was confirmed by this court in the Broadbands Homeowners Association versus Oakland Ban in 2013. Now thirdly, and I think it's very important, a dismissal for lack of standing, this court has said in 2011 in the City of Charlotte case versus against Benham, that lack of standing is premature before if it's made, a dismissal for lack of standing is premature before any discovery is made. So help me out at least in understanding the structural situation here. You say you're hierarchical, and here you have many entities, I assume, in this hierarchical situation. This is a group that has sort of broken off, and the question is that I have is in terms of your injury, so you now have an injury. What is the injury, and is it different? Does that injury also exist for those who haven't broken up? In other words, if this insurance company had reimbursed an entity that is not your litigation adversary, would you still have an injury? We would not, I don't think. So what is the injury? Is the injury here that you are being charged with? The people who have broken away, which locally called breakaways, have in litigation suing us, claiming that they own all the property we own, and that is a huge amount of property, including Diocesan property and parish property. Isn't that a coverage question as opposed to a duty to defend? Your Honor, what our claim is that because the Vermont Insurance Company is paying them for suing us, and they are our captive insurance company. Paying them in a sense of defense? Yes, the way we found out about this, they've been secretive about it. Vermont has been paying them to sue us by reimbursing all of their legal expenses. So that's what you mean by paying them. Paying them to me is a very broad category. I don't know if you would say they were given the money. You mean they are carrying on an insurance, a duty to defend. They see a duty to defend, which in most entities is a broader obligation than coverage by far. Yeah. And to be able to prove that you have a claim here because is that there's an injury you are suffering here, and is that the injury you're saying? Is that they're against you? It has the circumstance, Your Honor. We did not find that this was going on, found out it was going on, because it was secretive until 2019, when one of the parishes right here in Charleston said we would have had a budget deficit this year had the Vermont insurance company not given us $79,000, which we used to fight the Episcopal Church and its diocese. Now here's the fight now, but I'm going to get into the middle of what the merits of this are. That's not my interest here at all. I'm just trying to get this duty to defend. Weren't they defending against claims that you bought against them? But counterclaims. But what? There were counterclaims in the case. Huh. The answer is yes. They sued us, claiming that they own all of our property. We counterclaimed back that no, that's not right. But the fact is they have been trying to take our property from the church in a lawsuit that was filed in 2013, and it is still going on. Well, I just want to be clear that in the discussion of this case, even in the factual, from my perspective, the merits of it and what's going on under the underlying, really, this is a legal issue dealing with insurance type coverage. And that's a whole, I mean, you can make this as much as you want that we'll get in the middle of this fight. We're not in the middle of this South Carolina Supreme Court stuff here. And as Judge Barrett says, I'm not sure they won't answer this question too. But the question to us has to do with the insurance Right. And insurance duty in terms of defense is different than coverage. And that's why I said when you said pay, I was confused with that because I thought you were saying they gave them some money for some damages that were done. You say no, it's a duty to defend. And that's why that 2012 is a very important time period, isn't it? I mean, I see you backed away from that, but I thought it was pretty clear. Except it's continued beyond that. What has happened here in the claim against Vermont is that what they have done is violated their charter to the detriment of our client, the Episcopal Church in South Carolina. And they have flat out insured entities that- Have you all complained to the insurance commissioner of Vermont? We have not. And another point I should make is that they have no authority to do any business in South Carolina. Well, so did you complain to the insurance commissioner of South Carolina? We've complained to everybody we can find in South Carolina. Well, did you complain to the insurance commissioner of South Carolina? The insurance commissioner of Vermont? Judge Gergel says you can't bring that, you can't sue them in the federal court because you don't have standing to complain about who they're selling insurance to. Well, we think that Judge Gergel is in error on it because number one, we haven't had a chance to take any discovery on this to find the depth of the problem. And all of the allegations in our complaint are true, which established that we do have standing. And we just think that Judge Gergel has indeed made a mistake. What is your injury? Our injury is we have been engaged in litigation and lost property that they claim with the aid of the insurance company of Vermont paying their legal fees. Do you make any claim that the insurance company somehow got secret information from you as a client, your people, and gave it to these other people that they represented as a client? I do not know. Well, I cannot answer that question. No, you don't make it. That would be an injury. If they got something from you and then use it against you, that would be a problem. Assuming that the South Carolina Supreme Court, in the unlikely event that it says that we lose all our property to the people who have left, we've got a serious injury. And they have contributed to that injury by having all of their legal expenses and other expenses paid by our insurance company. Because without those lawyers, they couldn't have gotten this. In other words, it's the good lawyering that you're mad about. They got some good lawyers they could pay for. And based upon those good lawyers, they got property. Is that what you're saying? What if we're able to prove that the only money they had to pay legal fees with was what they got from our insurance company? That would be pretty bad. Well, I don't understand. They would get lawyers anyway. Why is it? I just really don't get your argument. Well, the argument is they have contributed to our loss. But I don't see how. Do you expect them to go without representation? Well, no. But if they didn't have any money to pay for the longest, they couldn't go following it on. They would ask for another insurance company. If they weren't insured by your insurance company, they'd be insured by somebody else. Well, the other thing is this. I may just be given a few seconds. According to the South Carolina Supreme Court, the insurance policy they are using to get these expenses is our insurance policy. And that is due to the delay of our insurance company, Vermont, that we're trying to bring this action against. You're over time. If you want to take it up and use your rebuttal, that's fine. I think you ought to stop there and have some time left for rebuttal. Okay. Thank you. Counsel? We're ready to hear from you. Are you muted? Okay. I'm sorry. I apologize. May it please support counsel Melinda Cole-Ross on behalf of the defendant, Appalichurch Insurance Company of Vermont. I think you've focused in on the repeated several times in tech's argument. We are not a captive of the Episcopal church. Church insurance company is owned by the church pension fund, 100%. That is documented in the record. And so these continued allegations and assertions that we are a captive of the Episcopal church are wrong. Explain the difference. I mean, this captive insurance thing, I'm going to tell you something. Everybody else may have known about it, but I didn't know about it until I got into this case. What's the difference here? A captive insurance company, the difference is it is owned by a parent's company. In this instance, the church pension fund and that church pension fund and its affiliates are the only entities that can be provided insurance by that captive. That's really all it means. The duty to defend indemnity obligations, those are the same, regardless whether you're dealing with a captive insurer, a mutual insurance company, which is owned by its shareholders, a publicly traded insurance company that anyone can own stock in. The duty to defend the indemnification obligations are no different. The captive status determines who, from an underwriting perspective, the policies can be issued to in the first instance. There is only one policy year at issue here, which as Judge Wynn pointed out at the beginning or asked a question about at the some of which disassociated in October and November of 2012. The policies were validly issued while they were still associated with the Episcopal church and this diocese. The policies do not disappear. They were in full force and effect at the time of the disassociation. The issue about duty to defend continues on. It is assessed based upon these underlying actions and specifically the counterclaims that the diocese brought against the disassociation. I'm going to ask you the question that Judge Bonds asked your opponent. This is in the South Carolina Supreme Court. Is there any reason for us to not just wait to hear from them and maybe see if South Carolina Supreme Court will resolve this question? Is that a possibility? It is not necessary to do that. They have alleged in their complaint and on appeal not that the policy gives them the rights that they are arguing about. They're saying it's this trust issue and currently the lower court found that they had no trust interest in all this property. Certainly that would knock them out of the box if that lower court decision is upheld, but it is not necessary to affirm Judge Gergel's ruling that there is no standing because the alleged trust, whatever its character and whether it's... So translate that to me. Just answer my question. Should we simply wait for the South Carolina Supreme Court to resolve and move with this matter and then determine or defer? No, you don't need to wait because the standing issue, they are insured under a separate policy and they've continued. The diocese has continued to be insured by church insurance company in 2013, 2014, 2015. The disassociated parishes are no longer insured by church insurance company. The only year at issue is 2012. However, as long as this litigation goes on, the duty to defend does not end at the policy year. If this litigation goes on another 20 years, we're on the hook, unfortunately, to continue with that defense. We've got written cases like that. States have written cases like that. That's why I say the duty to defend is broader than the coverage duty. Exactly. That's the problem you've got. And I was wondering who's paying the premium on this thing now. And I didn't think for one moment they were still paying it for the interest. You are at 100% right. The duty to defend is much broader. It continues on until the last of these lawsuits are resolved for the counterclaims. We are not funding litigation to affirmatively attack the diocese. There is no coverage under the insurance policy for that. It is a duty to defend. We owe a duty to defend the advertising injury claims that are brought as part of the counter claims by the diocese against these disassociated parishes. Whether they win or lose those claims is irrelevant to the duty to defend. It is very unusual, in fact, unheard of, to have somebody suing an insurance company for providing a duty to defend. That as long as what you look at to determine the duty to defend, the allegations of the underlying complaint, there are advertising injury allegations in the underlying counter claims asserted by the diocese. And then you look at the coverage part of our policy from 2012, which is in the record of the underlying case that the disassociated parishes brought against Church Insurance Company and of which Judge Gergel took judicial notice. Advertising injury is covered under the commercial liability part. There is a duty to defend that says Church Insurance Company has the right and the duty to defend claims potentially covered under the commercial liability part. That's why it doesn't matter if they win or lose. Potentially covered, very broad, it implicates the duty to defend. And the policy further states that the insurance are treated separately. So even if we didn't have and the diocese were all together on one policy, the insurance company is charged with the obligation of treating each insured separately. So your question previously, what about the parishes that didn't disassociate? They're covered for the duty to defend. Those that disassociated, as long as the policy was issued while they were associated, we are on the hook for defending them. We're on the hook for defending everyone, unfortunately. You're a great trial lawyer because you just talk on and on with one breath. I always admire lawyers who do that. Never give a judge a chance to ask the question. Have you ever had this situation before? Never. I've been doing insurance coverage for 28 years now. No, it's unusual. So you wouldn't no insurance company would voluntarily undertake providing insurance to both sides of litigation. Certainly not. And we're stuck providing defense costs for everybody here. Because there's been this disassociation. At one point, they were all together. And because one group for a period of time, and then as they continued, you didn't represent them. It only took several months. We didn't insure them anymore. Yes. Yes. So we don't insure them anymore. And we didn't, once the policies that were properly issued in 2012 expired, there were no renewals. Only the diocese that Mr. Tisdale represents continued with policy renewals. Now, I do want to make sure that you understand factually each- Well, just to follow up on Judge Moss's point, it is interesting. You are here in an instance where you are defending or you are indicating you should pay. You don't get many insurance company cases to come and do it. Normally, you and your opponent would be on the same side, and it would be those disassociated ones coming in and saying you should be paying. Usually, no, we shouldn't. So you'd be joining forces on this. It's kind of an interesting play of- I guess it's because you've already paid. So it doesn't matter at this point. And you've accepted the policy. Once you accept it, you kind of now have it. That's 100% right. And even if we assumed it in error, if we didn't owe a duty to defend, if we could have obtained a declaratory judgment determination that we didn't owe it, it doesn't matter. We can't be penalized for doing more than we needed to. As long as there was a potential for- Are you providing defense? Are you providing something that you had counterclaims against the other side? Are you providing a defense to those? We're providing a defense to everyone. So you are paying money on both sides? Yes. Yes. And so the injury that- which is what I was getting to. The injury here, at least from the mother church, so to speak, of the group, there's no injury. They're getting paid, but they're just mad because you're paying the ones that's fighting against them. Yes. But you're paying everybody. You're paying the fees on both sides of the state. Yes. We're paying everybody. There is no injury other than the assertions here that the litigation would- there would have been different attorneys defending. Well, we don't pick the attorneys. We're just reimbursing the defense costs in this case. Are all the facts that you're representing to us in this record? Or you're just- They are- You found this thing tied to record? No. They are either in the record, or they're in the documents of which the district court took judicial notice. There was an insurance coverage action brought by the disassociated parishes against Church Insurance Company. And those documents, the policy, the master policy, the commercial liability part that I'm referring to, that case number, and the docket number, and the pages, and have reproduced those. So technically, they are not in the joint appendix record in front of you, but they were- They have to be. I'm talking about the record of this case. There was a complaint filed. You never filed an answer, right? We did file an answer. We did file- Then you moved to dismiss. No. Well, yes. We moved to dismiss. The issue of standing came up, and then we reached standing. But we did answer the complaint. So I did- All right. Yes. I did want to- Are you accepting the allegations of the complaint as true? Mr. Tisdale says you're not. Only the factual allegations. And most of the allegations, he's trying to impose some obligation that we owe to not defend our disassociated parish insureds. Those are not factual allegations. Those are legal arguments. He is stating that this trust relationship, or the captive insurance laws, or the corporate charter, somehow impose a restriction upon us that we have to pick the diocese as the only entity that we will pay defense costs to, and to abandon the disassociated parishes. And- That's what you're doing going forward. It's just for one piece of one year that you're representing both of them. That's right. But the litigation has had a life of almost- I hear you. Decades. Judge Motz, I know you're very familiar with the life of the litigation and the circumstances. So unfortunately, we are stuck with that until it is finally over. But no, we do not continue to insure the disassociated parishes, because by our charter, we can- I'll let you talk, but I just want to ask you one more question. There seems to be subsilenceo in the other side's argument, the thought that if you are paying defense costs for one side, there's somehow less money to pay defense costs, or the other side is in some way hurt. Is that a real concern here? They're not hurt. We didn't tell them that they couldn't get all their defense costs because we're paying somebody else. There's no injury other than the perceived injury that the litigation continues. And the litigation continues because both sides are very entrenched in fighting the litigation. Well, it looks like you have a conflict of interest if you're paying both sides. No, there is- You can only be on one side of the lawsuit. There's no conflict of interest because we issued separate policies. We issued a policy of insurance, a master policy to the diocese. We issued separate individual policies. This is uncontroverted in the record by the affidavit of the church insurance company. Do you try to tell them how to run their case? Do you try to tell them what motions to file and what position to take? No, they have independent counsel. We're just footing the bill. Plus, that happens all the time. Two different groups and those groups will sue each other and you have to pay for both of the fees on it. That happens all the time. So I want to make sure we're clear that those facts are undisputed. Let me ask you something that I hadn't heard come up. When I asked you about the duty to defend and whether the other side had come, there was a declaratory judgment that was brought and then who settled it? Was it just between you and these disassociated entities? Was the parent church somehow involved in that settlement? No. The lawsuit that was brought, two lawsuits were brought. The disassociated parishes brought a lawsuit seeking defense against the church insurance company and the diocese Mr. Tisdale's client also sued church insurance company in a separate lawsuit seeking their defense costs. So we were sued twice. Did they seek to intervene in that matter that was brought by the disassociated entity against you? Did the diocese seek to intervene to say, no, you should not be paying their fees? I don't believe so. We actually tried to get everybody into this action. We moved for joinder to try and bring the disassociated parishes in so we could resolve these issues in one forum. But that motion was denied and actually Mr. Tisdale's client, the diocese opposed bringing the disassociated parishes in. His client's position was that they should stay out. His fight was now just with us. I mean, he's got these other fights in the state court with the disassociated parishes, but he wanted this fight to just be between the diocese and church insurance company. So you had two lawsuits which really could have been joined. Yes. And in my view, probably should have been joined to something and it would have settled this problem because then you could have determined, or at least it would have created the issue from the issue would have come out of that. Maybe not a settlement. Who knows? I mean, but it sounds like to me, there was some initial effort that started from the beginning where you've got both entities going against the insurance company. You didn't settle or didn't agree, basically agree to do it, is what you did. There was different timing involved. The diocese actually sued us for the disassociated parishes sued us second. So then we had these two different lawsuits. So, but it wasn't a secret lawsuit. They knew about this lawsuit coverage. And so you then settle it. And is, is the settlement agreement being challenged to you or what is being challenging? You have a settlement agreement. Is that different? Does that now obligate you different from the insurance? Once you settle it and you, are we now looking at the policy or we're looking at the settlement agreement as a basis for your duty to defend? The only, the only basis for the settlement was the allegations about duty to defend. There's never been any indemnity here. So there was allegations that we owe. I'm just curious. And maybe I'm just thinking too much on this. I'm thinking if without the settlement, there is a duty to defend arises under the contract and then they bring an action sentence. You've got to, and you dispute it. It says, no, we don't. Then you settle it. And my question at that point is now as insurance company, even if the contract didn't, if they can make a case to say you should be doing the contract, you've settled and say, I will. And that's not been challenged. So I don't, I'm trying to understand at least from your perspective, why doesn't that Because the basis was the insurance policy. So the allegations of their, I've got the basis, but I'm, I'm, I'm giving now you that basis have been superseded by, by, by now does this settlement agreement. You've now agreed to do something to say the insurance company is not ambiguous. The insurance company now requires me to do it. That's a higher type of obligation than the policy itself, which could be challenged to say, I didn't do it. I shouldn't do it. You see where I'm going? So once, once we accept the duty to defend, then there's no reason to keep the deck, the declaratory judgment action going. We accepted the duty to defend. But then maybe it wasn't caught. Maybe it wasn't a settlement then. Maybe you just accepted the duty to defend. There was a settlement, but I mean, the settlement is confidential. So I don't want to say too much about it, but the allegations are, we are continuing to pay their defense costs to reimburse the defense costs for the counterclaims brought by the diocese. My final point, and it seems to me, even if the other side prevailed on the argument that the contract doesn't allow you to do so, you've got to do so anyway, because you've settled it. You've now have a settlement. Yeah, we have both of those. We have both of those obligations, but the diocese does not have standing to challenge any of that. They're not a party to the settlement agreement. They're not a party to the policies that were issued to the disassociated- In that position is the one that Judge Gergel took? Yes, that there is no standing. There's no standing for any of those- On the specifics that you just recited. He found that there was no standing for any of the four claims alleged because there was a policy that arguably provided coverage. All we're doing is reimbursing defense costs, and that the diocese does not have standing to challenge our reimbursement of the disassociated parish's defense costs. They said they didn't get any discovery. They don't- They should've been entitled to discovery before they were ruled upon. There's no need for discovery because they have never alleged- I know you're going to say that because you won, so you're definitely going to say that, but- Well, I would say that because I won. I don't agree with that at all. But based on the complaint allegations, they allege that the trust relationship and the corporate charter and captive insurance laws are what give them the rights that they are alleging. The captive insurance laws are not a matter of discovery. Those can be researched without discovery. The corporate charter is already of record in the case, so you don't need any discovery as to that. And the trust relationship does not give one insured the ability to tell its insurance company not to insure somebody else and provide a defense to them in litigation. If I'm insured by State Farm and you're insured by State Farm and you rear-end me, I can't call State Farm and say, I'll be better off in my lawsuit if you don't defend the driver, Judge King, who rear-ended me. I'll be better off. I don't have standing. I don't have a right, regardless of any trust relationship. I can't do that. And that's basically the position that the diocese is taking, that its interests should be placed above those other insureds. And Judge Gergel found there's no standing and there's no discovery needed on that, because that's a legal argument. And we don't need discovery on the legal arguments. The facts are in the record and are undisputed. Thank you very much. You've exceeded your time. Unless my colleagues have any further questions, thank you for your argument. Thank you for your courtesy. Mr. Tisdale, do you have any rebuttal? Yeah, briefly. Thank you very much. Just trying to bring this understanding, this situation, to a simple understanding. And it is this, that the Episcopal Church in South Carolina, one of its 110 dioceses of the Episcopal Church, is a beneficiary of all the agreements made between the Episcopal Church or the church pension fund and the church and our diocese. And we are allowed to take advantage because of that connection. We are a beneficiary and allowed to see that our damage caused by the church insurance company is addressed. And the only thing we're doing in this lawsuit is to say we have standing to claim that they have hurt us by violating the law. And the law is that they have no chartered right to be financing adversaries of ours in a legal case. And they have no right to, you know, support two sides of the coin. So, all we're asking for is the right. Now, despite what has been said by our opposition, there is a lot of discovery that needs to be done in this case. We have found out that not only did the coverage not end in 2012, as we were led to believe that it did, we were led to believe that that coverage has been renewed and is going on right now. And we believe that we can prove and establish that the existence of that coverage has damaged us. And we... Let me ask you about the coverage renewed. I'm confused on that. If we accept it's the 2012 policy at the time, and they had a duty to defend, and if the existence of that duty to defend continues, even after the policy discontinues, you don't make an allegation that they still have a duty to defend? Well, we understand that that policy was renewed in 2013. That is, we have been told in public papers. We did not know that. By them? By them. They put forward in public papers that there was a renewed policy. That's a little different than providing coverage under this existing policy in ongoing litigation. So, litigation might exist in 2020. They have identified policies that they have renewed, new policies, not the 2012 policy. And it's okay. Well, where is that in the record? Page 13 in our opening brief. No, no, no. I want the record on it. Where is it? The record is pages 52 to 54. 52 to 54. In the record. And in the case of Church Insurance Company of Vermont, which was Judge Duffy, and that is a South Carolina case. I can give you the site on the case. I mean, it's 2-15-CV-02590, Judge Duffy, District of South Carolina. But it doesn't matter if the policy was renewed, if a duty to defend exists under 2012. So, the only thing that's a contest here is the payment of legal fees from the duty to defend. So, the fact that they continue to provide or renew a coverage, I'm missing that. Because what I understand is the duty to defend arises under the 2012, and that's a continuing obligation, whether you get a policy or not. They say they settled all of that in 2015. All issues, including the duty to defend. And they said they paid policy limits, whatever that means. And I think that's the same case in which they had to bring a suit for malpractice against their lawyer because he didn't get proper releases. And this thing is, Your Honor... You're saying that an insurance company can't be on both sides of a lawsuit? Well, not if... They can't have insurers that are suing each other, that are opposite one another. In the law, they do it every day, I would assume, in every jurisdiction in the country. Well, Your Honor, what I'm saying is that they had an obligation by law not to insure people who are not part of the Episcopal Church. Now, they are violating the law of Vermont and other places if they did that. But you haven't filed a complaint against them in the insurance commissioner in Vermont. You haven't complained about that. Well, they have gotten rid of what they owed, as we have already said, and renewed the policies. And as far as we know, they're going on right now. Counsel, you are about a minute and a half over. Unless my colleagues have further questions, we'll thank you for your argument and take the case under advisement. Well, we certainly appreciate your attention and listening to us on this matter. Well, we appreciate having you here. We wish we were in Richmond. We could go down and shake your hand, but we can't do that. Thank you, Your Honor.
judges: Diana Gribbon Motz, Robert B. King, James A. Wynn Jr.